## ANNA C. EMERY

### v.

## THOMAS GORDON et ux.

A mortgage, given in 1875, payable in five years, was assigned by the mortgagee to complainant January 5th, 1876, and the assignment recorded February 16th, 1876. The bond and mortgage and assignment all remained in the hands of the mortgagee, as agent of the assignee, for the collection of the interest, until November 1st, 1877, during which time the interest and part of the principal were paid by the mortgagor to the mortgagee, who paid over the interest to the complainant, but none of the principal. After November 1st, 1877, similar payments were made to the mortgagee, who again paid over the interest, but not the principal.—*Held*, that the payments of the principal made to the mortgagee after the assignment, and while the instruments remained in his possession, must be credited on the mortgage; *aliter*, as to such payments, after they had been withdrawn from him by the complainant.

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. D. J. Pancoast,* for complainant.

*Mr. A. Hugg,* for defendants.

THE CHANCELLOR.

The defendants, Gordon and wife, gave their mortgage, dated July 14th, 1875, on property in Camden, to Barton Lowe, executor, to secure the payment of Gordon's bond to Lowe of that date, conditioned for the payment of $3,500 in five years, with lawful interest, payable semi-annually, with proviso that on thirty days' default in the payment of the interest, the principal should become due. On the 5th of January, 1876, Lowe, by deed of assignment, assigned the bond and mortgage to the complainant. The assignment was duly recorded on the 16th of February, 1876. The bond, mortgage and assignment all remained in Lowe's hands up to the 1st of November, 1877, when they were withdrawn by the complainant, who took them into her own possession, and they were never afterwards, nor was any of them, returned to him. Gordon, while they were in Lowe's hands, paid the interest to him, and also $1,600 of the principal, and paid him the interest up to January 14th, 1879, and $900, also on account of principal, afterwards. Lowe paid the interest to the complainant, but never paid her any of the principal which he so received. He received the principal without her authority or knowledge, and never informed her that he had received it, but, on the other hand, paid over to her interest on the whole amount of the mortgage, not only up to November, 1877, but afterwards, and up to and including January 14th, 1879.

In paying her the interest after the papers were withdrawn from him he alleges that he did so as Gordon's agent. He left the state in May, 1879. When, in 1878, the complainant learned from Gordon that he had made payments on account of the principal to Lowe, and spoke to the latter about it, he denied that Gordon had done so, but said that the alleged payments were loans from Gordon to him, and not payments on account of the mortgage. The complainant early in January, 1878, sent through the post-office to Gordon a notification that no one was

authorized to receive the principal or interest on the mortgage for her, and thereby required him to pay her in person. Both he and she resided in Camden. He swears that he did not, to his knowledge, receive the letter, and there is no proof that it came to his hands. On the 8th of July, in the same year, she again wrote to him, reminding him that the interest would become due on the 14th of that month, and requesting him to pay it to her in person, or, in case of her absence from home when he should call for the purpose, to her landlady. He received that letter. On the 10th of December following she again wrote to him, asking for a payment (to be made the next January, though it would not then be due) of $1,000 on account of the principal, and reminding him that the interest would fall due on the 14th of January. She added that Judge Pancoast would collect her interest, and that she had put her business into his hands. This letter, also, Gordon admits that he received. He did not reply to it, however, until the 6th of January, 1879, nearly a month after it came to his hands, and he then merely said, referring to her request for the payment on account of principal, that he did not owe so much on the mortgage as she asked him for, and that if she wanted to know the particulars she should call on him before the 14th of January. It appears from his testimony that on receiving the two letters from her he called on Lowe and showed them to him, and the latter told him to pay no attention to them, adding that he (Lowe) was "the agent for the parties." Gordon says that when he made the payments to Lowe he considered Lowe the owner of the mortgage, and indeed the receipts given to him by Lowe after the assignment were not given as agent or attorney, but in Lowe's own name—in one instance as executor. From the time when the assignment was left for record Gordon was chargeable with notice that the complainant was the owner of the mortgage (*Rev.* *708* §§ *32, 34*), and his payments to Lowe after that time, on account of it, could only be allowed on the ground that Lowe was the complainant's agent. That he was such agent up to November, 1877, she herself says. She testifies that she left the bond and mortgage in his hands for about two years after they had been assigned to her, in order that he might

29

Emery v. Gordon.

receive the interest, and nothing else, and she adds that he was her agent for that purpose, and that after the two years she got her papers from him. The assignment was made in July, 1875, and she took the papers out of his hands in November, 1877. While Lowe thus had possession of the bond and mortgage, Gordon could safely pay both principal and interest to him. The principal, indeed, was not due, but nevertheless Lowe was the complainant's agent, and as such had possession of the bond and mortgage, and payments made to him on account of the principal, under such circumstances, were binding on her. But those made to him after the bond and mortgage were taken out of his possession, were not. The letter of July 8th, 1878, substantially gave Gordon notice not to pay interest to any one else except the complainant in person, or, in case of her absence from home, to her landlady. Gordon was, after the assignment was left for record, charged with the duty of seeing to it that the person, whether Lowe or any one else (except the landlady), to whom he should make payment, was entitled to receive it. In fact, he never made any payment to Lowe as the complainant's agent, but, being unaware of the assignment, paid him as the mortgagee, and after he received the complainant's letters of July 8th and October 10th, 1878, he acted on Lowe's assurance that they were of no importance, and took Lowe's advice to pay no attention to them. Under the circumstances, however, he is entitled to the same protection (and no more) as if he had actually known of the fact of the assignment, of the fact that after the assignment was made Lowe was, up to November 1st, 1879, the complainant's agent, having possession of the bond and mortgage as such, and that on that date Lowe's agency ceased, and the bond and mortgage were taken away from him accordingly. Lowe, by gross fraud, obtained from Gordon, on account of the principal of the mortgage, $2,500, which he has never paid over, and that money is hopelessly lost. As to $1,600 of it, the defendants are entitled to protection, but as to the rest they are not. Both Gordon and the complainant are innocent parties, and the question is, which of them should bear the loss. The defence of ratification which is set up is by no means established. The

weight of the evidence is against it.   Up to January 14th, 1879, interest was paid, as before stated, on the whole amount of the principal of the bond and mortgage.   After Lowe's departure from the state, which was in May, 1879, Gordon refused to pay interest on more than $1,000 of principal, which he insisted was all that was unpaid on the mortgage.   He paid $35 for six months' interest on that sum on the 14th of July, 1879, and the bill was filed in August following.   The principal was due, by the terms of the mortgage, on the 14th of July, 1880.

There will be a decree for the complainant for principal and interest, in accordance with the views above expressed.